**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Ricky D. CHOATE, Defendant-Appellant.**

**No. KCD 30599.**

Missouri Court of Appeals,
Western District.

Dec. 31, 1979.

As Modified on Court's Own Motion
Feb. 28, 1980.

Motion for Rehearing and/or Transfer
Denied March 3, 1980.

Andrew C. Webb, Sedalia, for defendant-appellant.

John Ashcroft, Atty. Gen., Kathleen Mills, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a jury conviction for issuance of a no funds check. Punishment was affixed by the court at five years in the Division of Corrections upon determination of the applicability of the Second Offender Act. The judgment is affirmed.

Appellant was charged by information alleging he issued a no funds check in the sum of $430.00 to the K-Mart Store in Sedalia, Missouri. The information charged that he violated § 561.450, RSMo (1969).[1]

Appellant does not challenge the sufficiency of the evidence, so it suffices to say that the state's evidence consisted of a K-Mart employee's identification of appellant as the person who issued the no funds check on December 13, 1977, the fact that the transaction occurred and the fact that property was received in exchange for the worthless check. Additional evidence included the testimony of the store manager. He testified that efforts were made to negotiate the check with the Bank of Knob Noster, Missouri and that the check was returned by the bank. Another witness, the vice-president of the Bank of Knob Noster, confirmed that there was no record of an account belonging to appellant with his bank.

The appellant offered no evidence.

Appellant presents four points on this appeal, and by the nature of these points, the procedural chronology of this case must be included. Appellant first alleges it was error for the trial court to overrule his motion to dismiss the information, since

1. This section under the new Criminal Code, effective January 1, 1979, is now numbered § 570.120.

that information was not disposed of prior to his being returned to the "sending state"; nor was he granted a trial upon the information within 120 days of his arrival in the "receiving state". All of this, he alleges, is in violation of § IV(c) and § IV(e) of the Interstate Agreement on Detainers Act.[2]

Appellant, for his second allegation of error, alleges it was error for the trial court to overrule his motion to dismiss since his magistrate's arraignment was insufficient and invalid. His third point alleges that error was committed by the trial court in its failure to sustain his objection to the giving of the court's instruction 1.02. Appellant's final point decries error by the trial court in its not declaring a mistrial upon an alleged misconduct of a juror and the alleged viewing of appellant in handcuffs by a juror.

The evidence shows that appellant issued the check on December 13, 1977. A complaint was filed on December 22, 1977. On the date of the complaint, appellant was incarcerated in Johnson County, Missouri on an unrelated charge. On February 14, 1978, appellant was committed to the custody of federal authorities and transported to the county jail in Greene County, Missouri, pursuant to a conviction for a federal offense.

On April 20, 1978, pursuant to a writ of habeas corpus ad prosequendum, appellant was transferred from the federal center for prisoners to the Pettis County jail to be arraigned on the instant charge. Appellant's arraignment was scheduled for April 28, 1978, but the arraignment was waived.

On May 4, 1978, a preliminary hearing was held, and appellant was bound over for trial on the instant charge. On May 19, 1978, arraignment was held and appellant entered a not guilty plea.

On May 23, 1978, appellant was returned to the physical custody of the federal authorities, and the Sheriff of Pettis County forwarded a letter to the federal authorities in Greene County, requesting a detainer. On June 8, 1978, the federal authorities acknowledged receipt of a detainer.

On August 17, 1978, appellant filed his motion for change of venue. On August 30, 1978, appellant was transported from federal custody to the Pettis County jail for further proceedings on the instant charge.

On September 1, 1978, appellant's motion to dismiss all charges was filed. The motion, in summary, alleged (a) the state had filed charges in the instant case; (b) on April 13, 1978, appellant was convicted of a violation of federal law and incarcerated pursuant thereto; (c) on May 4, 1978, the State of Missouri filed a detainer against appellant; (d) that the action by the state was in violation of § IV(e) of the Interstate Agreement on Detainers Act and (f) no trial was held on the state charge within 120 days of the date that appellant was returned to the State of Missouri, thus violating § IV(c) of the Interstate Agreement on Detainers Act.

On September 6, 1978, the state was granted leave to amend the information to include the instant charge and prior convictions of appellant. The purpose of the amended information would, upon conviction of the instant charge, make the Second Offender Act applicable. Receipt of the amended information was acknowledged, and appellant waived a formal reading of it.

Additionally, appellant's motion for change of venue was granted from Pettis

---

2. 18 U.S.C.A. App. (1970), § IV(c) and § IV(e) read:

"(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

(e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." (See also § 222.160, RSMo 1979, adopted as law by the State of Missouri in 1971).

County to Cooper County. Trial was set for September 14, 1978. The case was continued, and on October 2, 1978, appellant's motion to dismiss was heard by the court. On October 4, 1978, the court made findings and conclusions on appellant's motion to dismiss. The court found:

(1) appellant was in federal custody on February 14, 1978;

(2) appellant was convicted on federal charges on April 13, 1978;

(3) appellant was brought to Pettis County from federal custody under a writ of habeas corpus ad prosequendum dated April 10, 1978, on April 20, 1978;

(4) the arraignment of April 28, 1978 was waived by appellant;

(5) on May 4, 1978, after preliminary hearing, appellant was bound over for trial in the circuit court;

(6) on May 19, 1978, appellant entered a plea of not guilty;

(7) on May 23, 1978, appellant was returned to the custody of federal authorities; (On this same date, by letter, the Sheriff requested a detainer directed to the federal authorities. The record shows the request for detainer was filed on the federal record June 8, 1978.)

(8) on May 30, 1978, appellant was transferred from federal medical facilities to federal prison; and

(9) on August 30, 1978, under a writ of habeas corpus ad prosequendum, appellant returned to Pettis County for trial. Appellant requested a continuance and filed his motion for a change of venue. The trial date was set for September 14, 1978. Appellant requested and was granted a second continuance.

The trial court, after making the above specific findings, addressed the main contention of appellant. That contention is the same under the first two points raised by appellant on this appeal.

The question to be resolved is as follows: Between April 20, 1978 and May 23, 1978, did the Interstate Agreement on Detainers Act become operative because appellant

was delivered to the authorities in Pettis County by federal authorities in Greene County and then returned to Greene County?

If the question is answered affirmatively, the appellant's rights were violated under the Detainers Act, because of his return to federal custody before trial was had, and 120 days had lapsed since his subsequent transfer from federal custody to the Pettis County authorities to stand trial on the instant charge.

The trial court concluded appellant was not in Pettis County during the months of April and May, 1978, by reason of a detainer issued from authorities of Pettis County and filed with any federal authority having custody of appellant.

The trial court properly addressed the question of whether or not the Detainers Act was applicable to the instant case by virtue of the writ of habeas corpus ad prosequendum when it pointed out that such a writ is not a detainer under the case of *U. S. v. Mauro*, 436 U.S. 340, 361, 98 S.Ct. 1834, 1847, 56 L.Ed.2d 329 (1978) wherein Justice White, speaking for the court, declared: "We therefore conclude that a writ of habeas corpus *ad prosequendum* is not a detainer for purposes of the Agreement."

Appellant concedes the contention that a writ of habeas corpus ad prosequendum does not "trigger" the Detainers Act. However, he contends a detainer was lodged against him on three different dates. These dates are February 14, 1978, May 4, 1978 and May 23, 1978.

On February 14, 1978, appellant was in federal custody after having been convicted for a federal offense. Prior to the trial, appellant's counsel contended, by oral motion in open court, that a warrant was served on February 14, 1978. The record reveals that the alleged service of a warrant was nothing more than a statement made by defense counsel and unsupported by any evidence. There is no evidence to identify the nature of the alleged warrant, nor to support the allegation that it was actually served. The mere statement of counsel is not evidence, see *Mo. Pac. R.*

*Co. v. Rental Storage & Transit Co.*, 524 S.W.2d 898 (Mo.App.1975); and that mere statements not supported by evidence cannot be considered, see *State v. Muir*, 136 Mo.App. 118, 117 S.W. 620 (1909). Appellant offered no evidence of the service of any warrant.

■ Appellant's contention that the Detainers Act was triggered on May 4, 1978 is not supported by the record. May 4, 1978 was the date for appellant's preliminary hearing on the instant charge. He was in Pettis County pursuant to a writ of habeas corpus ad prosequendum, which was properly addressed by the trial court under *U. S. v. Mauro, supra*. See also *State v. Haslip*, 583 S.W.2d 225 (Mo.App.1979), which states that a writ of habeas corpus ad prosequendum does not "trigger" the "Act".

As regards the date of May 23, 1978, no detainer was issued against appellant as he was within the custody of the federal authorities. The record reveals appellant was physically returned to the federal facilities in Greene County on this date. Also, on this date, the Sheriff of Pettis County wrote a letter to the federal authorities requesting a detainer. Acknowledgment of the Sheriff's letter was made June 8, 1978. This case does not require a decision whether the detainer was lodged with the federal authorities on June 8, 1978 or May 23, 1978 because under either date, trial for appellant was set within 120 days. The Detainers Act was never made applicable to the instant case because trial was set for appellant within 120 days following the detainer date of June 8, 1978 or May 23, 1978. Further trial delay ensued by a change of venue and two continuances granted to appellant.

There has been great confusion over the role of the United States of America as a "state" within the meaning of the Detainers Act at the time of the adoption of the Act by Congress, see *U. S. v. Ford*, 550 F.2d 732 (2nd Cir. 1977), but whether or not the role of the federal authorities is a question in some jurisdictions is not dispositive of the issues in the instant case.

The adoption of the Detainers Act was to provide for speedy trials and to correct alleged problems concerning interruption of rehabilitation programs, successive sentencing of prisoners, prevention of contact between prisoners and counsel and enhancement of punishment pursuant to sentencing. None of these problems are supported by any evidence in the instant case.

That warrants can serve as detainers, see the discussion in the note in 48 Colum.L. Rev. 1190, 1191 nn. 6 & 7 (1948). The instant case provides nothing more than an unsupported assertion that a "warrant" was served. There is also the view that the Act becomes applicable only in interstate and not intrastate exchanges of prisoners, see *State ex rel. Stanley v. Davis*, 569 S.W.2d 202 (Mo.App.1978) and §§ 222.160–220, RSMo Supp.1975. This opinion and the disposition of this appeal under the facts of this case do not approach or attempt to resolve that issue.

Thus, point one is ruled against appellant upon the finding that the trial court did not err when it overruled appellant's motion to dismiss in finding that appellant was not in Pettis County in April and May of 1978 by reason of a detainer. In fact, his presence was by reason of a writ of habeas corpus ad prosequendum. Further, there is no evidence to support the mere allegation of the service of a warrant on February 14, 1978 and by failure of evidence to support such claim, said claim must fail by and under the rules in *State v. Muir, supra* and *Mo. Pac. R. Co. v. Rental Storage & Transit Co., supra*.

■ Appellant's second point amounts to nothing more than a mere general allegation of the violation of his constitutional rights under the federal and state constitution. These points were not presented in appellant's motion for new trial. In addition to appellant's failure to show where an eight-day lapse of time between his transfer to state custody and the date of his arraignment was prejudicial to his having received a fair trial, he has also failed to preserve anything for review by this court. That constitutional grounds for appeal must be raised by clearly stating with particularity the constitutional violation, see *State v. Bibee*, 496 S.W.2d 305 (Mo.App.1973); that

said objection must be preserved in motion for new trial, see *State v. Bibee, supra; State v. Flynn,* 541 S.W.2d 344 (Mo.App. 1976) and Rule 27.20. While this court may review alleged violations of constitutional rights, see *State v. Henderson,* 510 S.W.2d 813 (Mo.App.1974). There is nothing in this record to show manifest injustice to warrant involving the plain error rule. Appellant's point two is ruled against him.

■ The third point of error alleged was the trial court's failure to sustain appellant's objection to the giving of MAI–CR 1.02. Appellant alleges that this instruction presumes the guilt of the accused. The mere reading of MAI–CR 1.02 dispels the contention of appellant. The giving of MAI–CR 1.02 is mandatory, and the failure of the trial court to have given it would have been reversible error.[3] The instruction advises the jury of the crime of which a party stands accused and does not, by its wording, presume the guilt of an accused.

Point three is without merit and is ruled against appellant.

In his last point, appellant alleges the trial court erred in not declaring a mistrial for the misconduct of a juror who was allowed to view the appellant handcuffed to another inmate and in allowing a juror to use a public telephone. Appellant contends such acts deprived him of a fair trial.

The record in this case reveals that the alleged misconduct of a juror was never presented to the trial court until the motion for new trial. Upon the motion for new trial, a hearing was held and appellant testified. Appellant testified that during the noon recess, he was in the office of the Sheriff of Cooper County and handcuffed to another prisoner. During this time, a female juror entered the sheriff's office, observed appellant and made use of the public telephone. This was the sum total of the evidence on this question.

On this appeal, two cases are cited by appellant. These are *State v. Baber,* 74 Mo. 292 (1881) and *State v. Bayless,* 362 Mo. 109, 240 S.W.2d 114 (1951). Both of these cases address the question of juror misconduct.

*State v. Baber, supra,* held that it was not reversible error, even though the record revealed the jurors had been using liquors and had, in addition, toured the county jail. While the court considered such conduct was an indiscretion, it held such action not to be grounds for reversal.

The case of *State v. Bayless, supra,* stands for the proposition that jurors are not permitted the unauthorized use of a telephone, the receipt of unauthorized packages or bundles, or the unauthorized communication between them (jurors) and others. The court, in this case, pointed out the burden was on the state to show absence of improper influences upon a jury once such allegation is brought to the attention of the court.

While *State v. Bayless, supra* outlines a well based rule regarding juror misconduct, it has no application to the case herein. This matter, rather, rests upon nothing more than an allegation by appellant during a hearing on his motion for new trial.

Appellant testified there were several other persons in the room when the juror allegedly entered the sheriff's office. None of these people, although referred to by appellant, were subpoenaed, nor was there any other form of evidence submitted by appellant.

■ The point of error alleged, rather, turns on the failure of appellant to raise the issue of misconduct in a timely fashion. The appellant had the burden to bring, in a timely fashion, the alleged misconduct to the attention of the trial court, see *State v. Maples,* 96 S.W.2d 26 (Mo.1936) where, at page 30, the court declared that the raising of such contention comes too late in a motion for new trial unless the accused can show that neither he nor his counsel knew of such misconduct until the later time. See also *State v. Blair,* 280 S.W.2d 687, 689 (Mo.App.1955) whereby misconduct must be promptly brought to the court's attention and wherein the court declared, "A defendant having such knowledge cannot await the result of the trial, and if he loses his gamble take advantage of it by first asserting such in his motion for new trial," citing

---

3. See Rule 20.02.

*State v. Maples, supra, State v. Richardson*, 194 Mo. 326, 92 S.W. 649 (1906); *State v. Gilmore*, 336 Mo. 784, 81 S.W.2d 431 (1935); *State v. Cooper*, 271 S.W. 471 (Mo.1925) and *State v. Glazebrook*, 242 S.W. 928 (Mo.1922).

In the most strongly worded case on this issue, the court, in *State v. Bizzle*, 500 S.W.2d 259 (Mo.App.1973), at 264, declared:

"It is the rule in this jurisdiction that '[o]ne claiming misconduct affecting the jury must promptly call such to the attention of the court upon first knowledge of the defendant or his attorney and opportunity so to do. If not so called to the attention of the court at the time it must affirmatively appear that defendant and his counsel were ignorant of the misconduct at that time. A defendant having such knowledge cannot await the result of the trial, and if he loses his gamble take advantage of it by first asserting such in his motion for new trial.' (citations omitted) *State v. Blair*, 280 S.W.2d 687, 689[2] (Mo.App.1955). In the case before us, the alleged misconduct concerned the content of the jury's deliberations accidentally overheard by the defendant while he was sitting in the courtroom. Obviously, the defendant had knowledge of the alleged misconduct prior to the time the jury rendered its verdict. Neither before nor when the verdict was rendered did the defendant or his counsel call the alleged misconduct to the attention of the court. Under such circumstances the objection to the conduct of the jury 'comes too late when raised for the first time in the motion for a new trial.' *State v. Bobbst*, 269 Mo. 214, 190 S.W. 257, 260[4] (1916). Furthermore, the fact that the defendant had knowledge of possible jury misconduct independent of that of his counsel provides him with no recourse, for he is guilty of inexcusable negligence in not communicating that knowledge to his counsel so that the proper objection could be raised. *State v. McGee*, 336 Mo. 1082, 83 S.W.2d 98, 104[8–9] (1935). Here defendant's knowledge of facts indicating possible jury misconduct acquired prior to the verdict cannot be raised for the first time in

a motion for a new trial irregardless of whether the defendant had communicated such knowledge to his counsel prior to or after the verdict. The defendant, consequently, was not prejudiced by his absence at the hearing on the motion for a new trial."

The record herein reveals that on the motion for new trial, appellant alleged, by his own oral testimony, and nothing more, that a juror had been guilty of misconduct in his use of the telephone and in his observing appellant handcuffed to another prisoner. Aside from the fact that appellant failed to preserve this point for review by this court waiting to raise this issue in his motion for new trial, there is a complete lack of showing that such conduct was in any manner prejudicial to this appellant.

Point four is ruled against appellant.

The judgment of the trial court is in all respects affirmed.

All concur.