**Rusty Leon OSBAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 368–83.

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

Frank Jackson, Angie Henson, Dallas, for appellant.

Henry Wade, Dist. Atty. and Karen Chilton Beverly, Mike Rubbinaccio and Joe Revesz, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

A jury found appellant guilty of felony theft and assessed two years and a fine of $3,000. The Dallas Court of Appeals reversed in a published opinion. *Osban v. State*, 648 S.W.2d 790 (Tex.Cr.App.—Dallas 1983). The Court of Appeals held that the trial court erred in failing to suppress four handguns seized from the trunk of appellant's car. The Court of Appeals further held that, with these items excluded, there was insufficient evidence to support the conviction, and directed the trial court to enter a verdict of acquittal. We granted the State's petition for discretionary review to examine these holdings.

A pretrial hearing was held on appellant's motion to suppress. We summarize the testimony as follows. On September 6, 1980 Dallas police officer M.W. Dean recognized appellant driving a white Cadillac in north Dallas. From conversations with other officers, Dean knew that appellant's driver's license had been suspended through April of 1981. After checking the registration on the Cadillac and determining that it belonged to appellant, Dean stopped appellant and asked to see his driver's license. Appellant produced a valid Oklahoma license, but a radio check confirmed that appellant's Texas license was under suspension. At this point appellant was arrested and placed in the squad car.

Officer Dean called a wrecker to impound the Cadillac, and began to search the passenger compartment of the car.

Dean saw what appeared to be three "Black Mollies" in the ashtray.[1] Dean testified that he had experience in arresting people for possession of "Black Mollies," and for narcotics violations. See *Miller v. State*, 667 S.W.2d 773 (Tex.Cr.App.1984), and *Sullivan v. State*, 626 S.W.2d 58 (Tex. Cr.App.1982).

Dean also found, "some money over the visor, some money in the dash, money in the glovebox, [and] money in the front seat," amounting to over $3,000.00.

Officer Dean then took the keys from the ignition and unlocked the trunk. There he found eight handguns. Four were introduced at trial, and were identified as stolen in a burglary several days before.

The Court of Appeals reasoned: "The fact that a small quantity of suspected contraband and a large amount of cash were found in the front seat area of the vehicle does not amount to probable cause to search the trunk." [citing *Gill v. State*, 625 S.W.2d 307 (Tex.Cr.App.1981).]

The State argues that discovery of the Black Mollies in the ashtray of the front seat of the Cadillac provided Officer Dean with probable cause to believe he would find more contraband in the locked trunk of the car. The State urges that we reconsider our opinion on original submission in *Gill*, supra, in light of *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

The presence of the large amount of cash found in appellant's car puts the instant case in a somewhat different posture than *Gill*, supra, because in *Gill* the arguably suspicious items found in the passenger compartment were a marihuana cigarette, a towel, a bottle of rubbing alcohol, a spoon, and some cotton. Moreover, the rule established in *Gill* is that:

"The finding of a small quantity of suspected contraband in the passenger compartment of an automobile does not alone amount to probable cause to search the trunk." 625 S.W.2d at 311.

1. "Black Molly" is a slang term for biphetamine 20, which consists of resin complexes of dextroamphetamine and amphetamine. See Physician's Desk Reference, p. 426 (38th Edition, 1984); and American Drug Index, p. 88 (26th Edition 1982). Amphetamine is a Schedule II controlled substance.

Here, not only contraband, but a large amount of cash was discovered, suggesting that the driver of the car might be involved in the sale of controlled substances and might possess larger quantities of such substances in the trunk.

Nevertheless, this case is close enough to *Gill* with respect to the factual circumstances surrounding the search of the trunk, that we will review the test announced in the original opinion in *Gill.*

■ When an officer discovers even a small amount of contraband in the passenger compartment of an automobile, the key question to be asked, in terms of determining probable cause for a further search, is whether a man of reasonable caution would be warranted in the belief that other contraband items *may* be located in the trunk of the car. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Put another way, is it reasonable to assume that an automobile driver or passenger presumably possessing an illegal controlled substance might be hiding more of the substance in the automobile trunk? As the Supreme Court of Nebraska stated in *State v. Watts,* 209 Neb. 371, 307 N.W.2d 816, 819 (1981):

"Having found a quantity of illicit drugs in one part of the automobile does not sensibly suggest the probability that no more such substance is present."

After all, the trunk is not metaphysically removed from the rest of the car; it goes along for the ride. The discovery of a small amount of illicit drugs on somebody's back patio or in their front foyer would not sensibly suggest the probability that no more such substance was present in the master bedroom or bathroom despite the greater privacy interest the owner would presumably have in the latter rooms.

■ Both *Gill* and the case it relied on, *Wimberly v. Superior Court,* 16 Cal.3d 557, 547 P.2d 417, 128 Cal.Rptr. 641 (1976), were partially bottomed on the distinction between occasional users of controlled substances and those who buy and sell such substances in large quantities.

In *Wimberly,* for instance, the court invalidated the search of a car trunk undertaken after officers discovered a smoking pipe, 12 marihuana seeds, the odor of burnt marihuana, and a plastic bag containing a small amount of marihuana in the passenger compartment of an automobile. The court reasoned:

" ... Just as the statutes differentiate between the casual user and the dealer of narcotics...., logic compels that we also differentiate between the two and recognize that all casual users are not dealers. Here, the erratic driving, the plain view observation of the marijuana seeds adjacent to the pipe, the odor of burnt marijuana, the burnt residue in the pipe, and the small quantity of marijuana secreted in the jacket indicate only that petitioners were casual users of marijuana. It was thus proper to search adjacent areas of the vehicle ... but it was not reasonable to infer that petitioners had additional contraband hidden in the trunk." 547 P.2d at 427, 128 Cal.Rptr. at 651.

But even though there is a distinction between users and dealers and the latter are *more* likely to have additional contraband hidden in the trunk, this does not mean that users, whether occasional, regular, or habitual, are *not* likely to hide additional contraband in the trunk. Under the logic of *Wimberly,* an officer who discovers a driver and passenger each in possession of a prohibited weapon, cannot search the trunk of their vehicle because no evidence exists that the suspects deal in illegal weapons.

Aside from its inherent illogic, *Gill* had no support in our case law and in fact went against the weight of what authority existed. See *Sheldon v. State,* 510 S.W.2d 936 (Tex.Cr.App.1974); *Henson v. State,* 502 S.W.2d 719 (Tex.Cr.App.1973); *Fry v. State,* 493 S.W.2d 758 (Tex.Cr.App.1972); *Pace v. State,* 461 S.W.2d 409 (Tex.Cr.App. 1970); *Taylor v. State,* 421 S.W.2d 403 (Tex.Cr.App.1967).

The analysis employed in *Wimberly* (and relied on in *Gill*) has been explicitly rejected in recent years by two state supreme

courts and implicitly rejected by another. See *State v. Schinzing*, 342 N.W.2d 105 (Minn.1983); *State v. Watts,* supra; *People v. Langen,* 60 N.Y.2d 170, 469 N.Y.S.2d 44, 456 N.E.2d 1167 (1983). See also *Sterling v. State,* 421 So.2d 1375 (Ala.Cr.App.1982).

Though *Gill* purported to rely on *Maldonado v. State,* 528 S.W.2d 234 (Tex.Cr.App. 1975), the latter case is easily distinguishable. In *Maldonado,* an officer who *at most* had probable cause to determine if the defendant's truck was stolen, exceeded the scope of a permissible search by ripping up the floorboards and discovering a false compartment containing 650 wrapped packages of marihuana. The officer had no probable cause whatsoever to believe that illicit drugs were located anywhere in the truck.

Accordingly, we overturn the rule established in the original *Gill* opinion, irrespective of any effect *United States v. Ross,* supra, has on the decision. It should be noted, however, that although *Ross* does not overrule *Gill,* the reasoning in *Ross* substantially undercuts the reasoning in *Gill.*

In *Gill* we stated at 310 that:

"Probable cause to search part of a vehicle is not inevitably probable cause to search the entire vehicle ... *The reason is that* the search and seizure amendments of our constitutions protect people's rights to privacy, ... and there are different expectations of privacy in different parts of an automobile." (Emphasis added.)

The above analysis is incorrect, to the extent that it confuses the question of "what is a search?" with the question of "what is probable cause?" If probable cause to search part of a vehicle is not inevitably probable cause to search the entire vehicle this is because there is not enough evidence to warrant a man of reasonable caution in suspecting that contraband or evidence of a crime can be found throughout the entire vehicle. For instance, probable cause to believe that a sword is located somewhere in an automobile does not give the police probable cause to search a coffee can found in the vehicle.

This is so, *not because* an accused's privacy interest in the coffee can is different than his privacy interest in the rest of the vehicle, though this may very well be the case, but because one is not likely to find a sword in a coffee can. This much was made clear in *Ross* when the Court stated:

"A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon may be found. A warrant to open a footlocker to search for marijuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that *might* contain the object of the search. When a legitimate search is under way, and when its purpose and limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

" ...

"As Justice Stewart stated in *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), the Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view ... But the protection afforded by the amendment varies in different settings. The luggage carried by a traveler entering the country may be searched at random by a customs officer; *the luggage may be searched no matter how great the traveler's desire to conceal the contents may be.* A container carried at the time of arrest often may be searched without a warrant and even without any specific suspicion concerning its contents. A con-

tainer that may conceal the object of a search authorized by a warrant may be opened immediately; the individual's interest in privacy must give way to the magistrate's official determination of probable cause.

"In the same manner, an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband. *Certainly the privacy interest in a car's trunk or glove compartment may be no less than those in a movable container. An individual undoubtedly has a significant interest that the upholstery of his automobile will not be ripped or a hidden compartment within it opened. These interests must yield to the authority of a search, however, which—in light of Carrol—does not itself require the prior approval of a magistrate.* The scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of the magistrate is waived; the search otherwise is as the magistrate could authorize. *"The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found.* Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, *probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase.* Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

" ...

" ... We hold that the scope of the warrantless search authorized by [the automobile] exception is no broader and no narrower than a magistrate could le-

gitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 456 U.S. at 820–825, 102 S.Ct. at 2170–2173. (Emphasis added.) (Footnotes omitted.)

Yet even if discovery of the "Black Mollies" and the large amount of cash gave Officer Dean probable cause to search the trunk, the question remains whether he was justified in searching the passenger compartment in the first place.

Under the rule of *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), a search incident to a valid custodial arrest of persons who are in or recently have been in an automobile extends to the entire passenger compartment and all containers, open or closed, found there.

In *Brown v. State,* 657 S.W.2d 797 (Tex. Cr.App.1983), we stated:

" ... [T]his Court has opted to interpret our Constitution in harmony with the Supreme Court's opinions interpreting the Fourth Amendment. We shall continue on this path until such time as we are statutorily or constitutionally mandated to do otherwise." 657 S.W.2d at 799.

■ Though the State has not contended that the search of the passenger compartment was valid under *Belton,* this is excusable since the Court of Appeals' opinion assumed the search of the passenger compartment was valid. Nevertheless, it is unmistakably clear from the record that the facts of appellant's custodial arrest placed him squarely within the confines of *Belton.* Accordingly, Officer Dean was justified in searching the passenger compartment of appellant's car after he had placed appellant under arrest.

The Court of Appeals erred in holding that the evidence should have been suppressed.

■ The Court of Appeals also erred in excluding from its review of the sufficiency of the evidence those items that the Court held had been improperly admitted. The Court of Appeals should have considered

all the evidence in determining its sufficiency to support the conviction. *Porier v. State,* 662 S.W.2d 602 (Tex.Cr.App.1984); *Adams v. State,* 639 S.W.2d 942 (Tex.Cr. App.1982); *Collins v. State,* 602 S.W.2d 537 (Tex.Cr.App.1980). Accordingly, we remand the case to the Court of Appeals for consideration of the remaining grounds of error advanced by appellant.

The judgment of the Court of Appeals is reversed and the cause is remanded to that Court.

TEAGUE, Judge, concurring and dissenting.

Rusty Leon Osban, appellant, was convicted after a jury trial on an indictment that was returned on January 20, 1981, which alleged that he did on or about August 29, 1980, unlawfully appropriate several pistols worth at least $200 but less than $10,000. The pistols were recovered by the arresting officer from the locked trunk of an automobile that appellant had been driving when he was arrested for driving the motor vehicle while his Texas driver's license had been suspended. The jury also assessed punishment at two years' confinement in the Department of Corrections and a $3,000 fine.

On appeal, the Dallas Court of Appeals correctly ordered the appellant's conviction reversed. See *Osban v. State,* 648 S.W.2d 790 (Tex.App.—Dallas 1983). The court of appeals held that the trial court reversibly erred when it overruled appellant's motion to suppress the evidence. It relied upon *Gill v. State,* 625 S.W.2d 307 (Tex.Cr.App. 1981) (On State's Motion for Rehearing).

The Dallas Court of Appeals made two correct findings in its decision: (1) It found that there was no probable cause to search the locked trunk of the automobile that appellant had been driving prior to when he was arrested, and (2) it found that "the inventory search of the locked trunk [of the vehicle that appellant had been driving at the time he was arrested] was an unlawful search."

I will first address the second finding that the court of appeals made.

The facts that were developed at the hearing on appellant's motion to suppress reflect that after appellant was arrested he told the arresting officer "that there was someone, (his ex-wife), who was at that location, that he could leave the keys with [and] ... who could take custody of that car, (which was then legally parked), at that instant." The officer refused to release the vehicle to appellant's ex-wife, "because I didn't know who the other person was. And it would be just the same as leaving it there unattended, because I didn't know who she was."

The officer is clearly mistaken because under our law it is not whether the officer knows the person that the accused requests have custody of his vehicle, but, instead, is whether the accused knows that person *and* is willing to have his vehicle released to that person.

An arrestee's automobile may be impounded by the police if he has been removed from it and placed under custodial arrest *and no other alternative is available* to insure the protection of the vehicle. *Smyth v. State,* 634 S.W.2d 721 (Tex.Cr. App.1983); *Benavides v. State,* 600 S.W.2d 42 (Tex.Cr.App.1980). In *Benavides v. State,* 600 S.W.2d 42 (Tex.Cr.App.1980), this Court held that if other alternatives are available the police may not impound a motor vehicle that had been driven by the accused prior to when he was arrested by the police. In *Stephen v. State,* 677 S.W.2d 42, 44 (Tex.Cr.App.1984), fn. 1, this Court also stated the following: "Clearly, in the instant case, if appellant's companion had had a valid driver's license and it was appellant's desire to leave his car with his companion, the officers should have respected his wishes. See *Daniels v. State,* 600 S.W.2d 813, 815 (Tex.Cr.App.1980)."

In this instance, the evidence is clear that the officer did not consider the alternative of releasing appellant's vehicle to his, appellant's, ex-wife. The arresting officer's testimony also makes it clear that under no circumstances was he going to release appellant's vehicle to appellant's ex-wife.

The majority errs in holding that the impoundment of the appellant's vehicle was lawful.

I will next address the first finding that the court of appeals made, namely, that there was no probable cause to search the locked trunk of the automobile that appellant had been driving prior to his arrest.

First, I point out that it is difficult to put a handle on just what the majority opinion holds regarding whether there was probable cause to conduct a warrantless search of the locked trunk of the vehicle.

Is the majority holding that because the officer had probable cause to search the passenger compartment of the vehicle that this gave him probable cause to search the locked trunk of that vehicle? Is the majority holding that because the arresting officer saw in plain view a black molly in the ashtray of the vehicle, and also found inside of the ashtray two more black mollies, and also found over $3,000 that was over the sunvisor of the vehicle, that this gave him probable cause to believe that contraband was in the locked trunk of the vehicle? Is "suggesting" something now the equivalent of probable cause to search? Is an inarticulate hunch, suspicion, or good faith of the arresting officer now sufficient to constitute probable cause for a warrantless search of a locked trunk of an automobile? Is the majority holding that if the police have probable cause to search the interior of a motor vehicle that this is probable cause to search every nook and cranny of that vehicle? Is the majority holding that if the police have lawfully arrested someone and they unlawfully impound the arrestee's vehicle, but have probable cause to search the interior compartment of that vehicle, that this will warrant the police to disassemble the motor vehicle, from bumper to bumper?

A careful reading of the majority opinion makes it clear to me that only its author knows what the real and actual holding of the opinion is, and he apparently is not going to disclose in bold print that holding to anyone. And yet, his opinion gets the vote!!!

The arresting officer's testimony clearly reflects that prior to the time he opened the locked trunk of the vehicle that appellant had been driving prior to when he was arrested he had no reason to believe, much less suspect, that the locked trunk of the vehicle might contain something that could be considered unlawful.

Because a locked trunk of an automobile is probably one of the most secure places one might find, the "expectation of privacy in a locked trunk can be outweighed or overcome only by the showing of probable cause that, for example, the trunk contains a dangerous instrumentality, such as a gun or a bomb," or there is probable cause "to believe ... contraband, or fruits of a crime are contained therein, and exigent circumstances exist to preclude the need to obtain a warrant." *Gill v. State*, supra, at 319–320. Both causes are non-existent here.

It should not be questioned by anyone that "the expression, 'inventory search,' is not a talisman in whose presence the Fourth Amendment or Art. I, Sec. 9, of the Texas Constitution fades away and disappears." *Gill v. State*, supra, at 319. This Court also stated in *Gill v. State*, supra, in which not a single dissenting vote was cast, the following: "Absent a showing of probable cause and exigent circumstances, a warrantless search of a locked automobile is per se illegal." (319).

If the majority is implicitly holding that the finding of three black mollies and money in the interior of the vehicle that appellant had been driving prior to when he was arrested gave the arresting officer probable cause to search the locked trunk of the automobile, then it displays a poor understanding of the meaning of the legal concept of "probable cause."

I believe that in the context of a warrantless search conducted of a locked automobile trunk the legal term "probable cause" means that the searching officer has a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the trunk contains unlawful contraband, and exigent circumstances exist to dispense with obtaining a warrant. *Brown*

*v. State*, 657 S.W.2d 797, 801 (Tex.Cr. App.1983); *Landa v. Obert*, 45 Tex. 539 (1876); *Munns v. Dupont de Nemours*, 3 Wash.C.C. 31, 4 Hall Law J. 102, 1 Am. Lead.Cas., 17 Fed.Ca.993 (Case No. 9,926, Cir.Ct., D.Pa., May, 1811).

Even common sense should tell a rational person that the mere finding of three black mollies and a large sum of money inside the interior of an automobile would not, without more, give that person probable cause to believe that there is something unlawful inside of the locked trunk of that automobile. And yet, the majority opinion, in holding to the contrary, flies in the face of common sense.

I also find that the majority misreads what the Supreme Court stated and held in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The Supreme Court did not hold in that case that if the police have probable cause to search the interior of a motor vehicle that this constitutes probable cause to search the locked trunk of that vehicle. The Court simply held that if police officers who have legitimately stopped an automobile have probable cause to believe that contraband is in the trunk of the automobile they may search the trunk under those circumstances. "The scope of a warrant-less search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places *in which there is probable cause to believe that it may be found.*" [My Emphasis]. 456 U.S., at 824, 102 S.Ct., at 2172. Cf. *Esco v. State*, 668 S.W.2d 358 (Tex.Cr.App.1982).

The majority of this Court, without any basis for its statement, states the following: "Here, not only contraband, but a large amount of cash was discovered, *suggesting* that the driver of the car might be involved in the sale of controlled substances and might possess larger quantities of such substances in the trunk." [My Emphasis]. Is "suggesting" something now to be the equivalent of the legal term "probable cause?" How the finding of 3 black mollies and a large amount of cash in the interior of an automobile, without more, can constitute probable cause that the appellant had been earlier selling or was going to later sell black mollies escapes me for the moment. Such a statement by the majority makes about as much sense as saying that because there is probable cause to believe that all persons sitting in the interior of a lawfully stopped motor vehicle are illegal aliens that this constitutes probable cause that more illegal aliens are inside of the locked trunk of the vehicle. Cf., however, *United States v. White*, 766 F.2d 1328 (9th Cir.1985), 37 Cr.L. 2360, which held that an arresting border patrol officer, based upon what he observed from the outside of the vehicle, had "reasonable suspicion" to believe that illegal aliens were in the trunk of an automobile. This decision of the Ninth Circuit should be considered in light of the many reversals it has recently sustained by the Supreme Court. Because of these reversals, the present Ninth Circuit Court of Appeals appears to have gotten whatever message the Supreme Court was sending to it by way of the reversals. See *The National Law Journal*, Monday, August 19, 1985, and Monday, August 11, 1986.

Under the facts and circumstances of this case, the arresting officer had the right to search the locked trunk of appellant's vehicle only if he had probable cause to believe that something unlawful was then contained inside the trunk and exigent circumstances existed to dispense with obtaining a warrant. *United States v. Ross*, supra. Thus, the scope of the search of appellant's motor vehicle was limited only by the nature of the article for which probable cause exists. In this instance, the officer did not have probable cause to search the locked trunk of appellant's automobile for anything, nor did the State establish exigent circumstances. Also see *United States v. Wilson*, 636 F.2d 1161 (8th Cir.1980); *Mozzetti v. Superior Court*, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971); *State v. Boster*, 217 Kan. 618, 539 P.2d 294 (1975); *State v. Sawyer*, 174 Mont. 512, 571 P.2d 1131 (1977); *State v. Goff*, 272 S.E.2d 457 (W.Va.1980). In making the warrantless search of the locked

trunk of appellant's vehicle, the arresting officer acted unlawfully. The majority errs in upholding the search of the locked trunk. I dissent.

Notwithstanding its inability to understand the legal concept of probable cause to make a warrantless search of a locked automobile trunk, the majority does correctly hold that the Dallas Court of Appeals, in deciding the merits of appellant's challenge to the sufficiency of the evidence, erroneously failed to consider all of the evidence, both admissible and inadmissible evidence. Therefore, I concur to that part of its opinion.

For all of the above reasons, I respectfully concur and dissent to the majority opinion.

CLINTON, Judge, dissenting.

I.

The rationale of the court of appeals in arriving at its conclusion that the handguns

**1.** The State maintains that the search of the trunk occurred pursuant to a lawful inventory of appellant's Cadillac. This Court has recently handed down a trilogy of cases regarding the lawful scope of an inventory search. *Kelley v. State,* 677 S.W.2d 34 (Tex.Cr.App.1984); *Guillett v. State,* 677 S.W.2d 46 (Tex.Cr.App.1984); *Stephen v. State,* 677 S.W.2d 42 (Tex.Cr.App.1984). At first blush these cases seem to control the instant case. Each case upheld a search, as part of an inventory pursuant to a lawful impoundment, of a locked compartment of an automobile, because the search was not conducted by means of a forcible entry. The Court reasoned that once the arresting officer obtained access to the key to the locked compartment, that compartment fell within the ambit of one of the justifications for inventory searches enumerated in *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), *viz.,* to protect against possible future claims of theft of property by the police. See *Stephen,* supra.

However, I find that application of any analysis of the *scope* of the inventory in this case to be pretermitted. Before an inventory search will be upheld there must be a lawful impoundment. *Benavides v. State,* 600 S.W.2d 813 (Tex. Cr.App.1980). An automobile may be impounded if the driver has been removed from it and placed under custodial arrest and no other alternative is available to insure the protection of the vehicle. *Smyth v. State,* 634 S.W.2d 721 (Tex. Cr.App.1982); *Benavides v. State,* supra.

At the pretrial hearing the following exchange transpired during recrossexamination of Officer Dean:

should have been suppressed appears to me to be somewhat unclear. The court stated: " ... the inventory search of the locked trunk was an unlawful search. *Gill v. State,* 625 S.W.2d 307, 317–320 (Tex.Cr. App.1981) (en banc) (Opinion on motion for rehearing) [other citations omitted]. The fact that a small quantity of suspected contraband and a large amount of cash were found in the front seat area of the vehicle does not amount to probable cause to search the trunk. *Gill* at 311." 648 S.W.2d at 791. It appears that the court of appeals thus invalidated the search in this case on the grounds that there was no probable cause to support a search of the trunk of the car merely because suspected contraband was observed in the passenger compartment of the appellant's car, and that the scope of a permissible inventory search did not encompass the locked trunk. In its petition to this Court the State has challenged both of these apparent holdings. The majority writes only on the issue of probable cause.[1]

"Q: Officer Dean, as a matter of fact, sir, Mr. Osban over here told you there was someone at that location that he could leave the keys with, who he had a direct relationship with who could take custody of that car at that instant, didn't he?

A: Yes.

Q: And he asked you if he could do that, didn't he?

A: Yes.

Q: And you told him no, isn't that correct?

A: That's correct."

Immediately thereafter, on redirect examination by the prosecutor, the following occurred:

"Q: Give the Judge the reason why you didn't release it to the other person.

A: Because I didn't know who the other person was. And it would be just the same as leaving it there unattended, because I didn't know who she was."

Whereupon, again on recross, the following:

"Q: Didn't he tell you it was his ex-wife?

A: Yes.

Q: Did you make any attempt whatsoever to determine whether or not she would be willing to take custody of that vehicle.?

A: No, I did not.

Q: You didn't?

A: I did not know who she was."

Based on this testimony it appears that Officer Dean had a clear alternative before him which he chose to ignore. Had he relinquished custody of the Cadillac to appellant's ex-wife, who was at the scene, all caretaking responsibility on the part of the police would have been obviated. Dean could easily have ascertained whether this

The State argues that discovery of the Black Mollies in the ashtray of the front seat of the Cadillac provided Officer Dean with probable cause to believe he would find more contraband in the locked trunk of the car. We are urged to reconsider our opinion on original submission in *Gill*, supra, in light of recent cases of the United States Supreme Court, notably *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) and *Michigan v. Thomas*, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982).

In its analysis the majority begins by distinguishing the instant case from *Gill* on its facts, thusly:

> "Here, not only contraband, but a large amount of cash was discovered, suggesting that the driver of the car might be involved in the sale of controlled substances and might possess larger quantities of such substances in the trunk."

Maj. op. at p. 109. Rather than pursue its perceived distinction between circumstances which would lead a cautious man to conclude he has found a casual user of drugs from those "suggesting" he has discovered a contraband salesman,[2] however, the majority instead concludes that despite the distinction the instant case is "close enough" to *Gill* on its facts that it may reach out and overrule it. In doing so the majority does not rely on *Ross*, as the State urges. Indeed, it cannot, for the simple

reason that the rationale in *Ross* does *not* "undercut" that of *Gill*.

## II.

In *Gill* a search of the defendant's car uncovered a marihuana cigarette and other items which could be construed as drug paraphernalia.[3] The officers then requested of the defendant the keys to the trunk, and when he refused, they had the back seat of the car removed so that they could search the trunk. There they found a bottle of hydromorphone tablets, for possession of which the defendant was prosecuted.

In his opinion on original submission Judge Roberts broke down his probable cause analysis thusly:

> "The issue of probable cause for the search of the trunk comprises two questions: Does the existence of probable cause to search the interior of the car necessarily mean that there was probable cause to search the trunk? If not, was there nonetheless probable cause to search the trunk? The answer to both questions is, No."

625 S.W.2d 310. As to the scope of the search which was supported by the discovery of the marihuana and paraphernalia in the front seat of the automobile, the Court concluded:

> "A search based on probable cause which reasonably tends to support only the inference that contraband or evidence will be found in the passenger compartment

---

"other person" was indeed appellant's ex-wife, and whether she would willingly have taken custody of the vehicle, as appellant requested. Further, that Dean did not know who she was makes no difference as long as it was appellant's desire to turn the car over to her. This case is clearly distinguishable from *Stephen*, supra, wherein it was shown that the passenger in defendant's car when he was stopped had no license and therefore could not legally have driven the car. In a footnote Judge McCormick noted that " ... if [defendant's] companion had had a valid driver's license and it was [defendant's] desire to leave the car with his companion the officers should have respected his wishes. See *Daniels v. State*, 600 S.W.2d 813, 815 (Tex. Cr.App.1980)." *Stephen*, supra, at 44.

Because there was an alternative available to Officer Dean which would have removed any caretaking responsibility from the hands of the

police, the impoundment in this case was gratuitous and unlawful. Therefore the search of the trunk cannot be justified as an inventory pursuant to a lawful impoundment. *Benavides v. State*, supra. *Daniels v. State*, 600 S.W.2d 813 (Tex.Cr.App.1980). Appellant raised this matter in his brief to the court of appeals, which did not address it.

2. Like Judge Teague, I fail to see how circumstances "suggesting" contraband "might" be found are "sufficiently strong in themselves to warrant a cautious man in the belief" that contraband will be found.

3. To wit: " ... a syringe which contained a liquid that was not identified, a marihuana cigarette, a towel, a bottle of rubbing alcohol, a spoon, some cotton, and a briefcase which contained various papers." 625 S.W.2d at 309.

is of intolerable intensity and scope if it is expanded to include a closed trunk. Such an expansion must be justified by specific, articulable facts that give probable cause to believe that contraband or evidence is concealed in the trunk. [Citations omitted]."

*Id.,* at 311. As to whether the items found in the front seat gave rise to independent probable cause to believe contraband was contained in the trunk, the Court held:

"The finding of a small quantity of suspected contraband in the passenger compartment of an automobile does not alone amount to probable cause to search the trunk. [Citations omitted]."

*Id.* These holdings are unaffected by the decisions in *United States v. Ross* and *Michigan v. Thomas,* both supra.

In *Ross* the Supreme Court concluded that where police officers have probable cause to believe contraband is contained somewhere within the confines of a motor vehicle " ... they may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched.' " 456 U.S. at 800, 102 S.Ct. at 2160, 72 L.Ed.2d at 578. The Court elaborated:

"*When a legitimate search is under way, and when its purpose and its limits have been precisely defined,* nice distinctions between closets, drawers and containers, in the case of a home, or between glove compartments, upholstered seats, trunks and wrapped packages, in the case of a vehicle, must give way to the prompt and efficient completion of the task at hand." [4]

456 U.S. at 821–822, 102 S.Ct. at 2171, 72 L.Ed.2d at 591. Thus the Court delineated the legitimate reach of a vehicle search once probable cause has been established which justifies searching the entire vehicle.

In *Ross* the arresting officers had probable cause to support a general search of the vehicle before they made the stop. Thus, the scope of their search was held to extend to any area of the car, and to the contents of any container therein, within which it was reasonable to believe that the contraband might be concealed. See also *Esco v. State,* 668 S.W.2d 358 (Tex.Cr.App. 1982) (Opinion on state's motion for rehearing).

In the instant case, as in *Gill,* the arresting officers had no probable cause whatever to believe appellant's car contained contraband prior to making the stop. Probable cause to search must therefore be predicated, and its scope defined, by factors observed after appellant was pulled over for driving without a license. Unless those factors add up to establish probable cause to believe contraband may be found throughout the car, not simply in the passenger compartment, then the search of the trunk is indefensible. This is so because until the factors so add up, the purpose and limit of the search have not yet been defined to include the trunk.

The question really boils down to this: based on the facts purporting to give rise to probable cause in this case, how extensive a search could a magistrate have authorized? Officer Dean found cash and "Black Mollies" in the front seat of the car. Nothing was found in the back seat.[5] Clearly the capsules in the ashtray would support a search of the passenger compartment and any receptacle therein which reasonably might contain further controlled substances. *Ross* so dictates. However, whether these facts also give rise to probable cause to believe contraband has been stowed in the trunk is a question that continues to be controlled by *Gill,* irrespective of the decision in *Ross;*[6] at least it was until today.

**4.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**5.** *Gill* distinguishes *Borner v. State,* 521 S.W.2d 852 (Tex.Cr.App.1975) in that, in *Borner* there was a strong odor of marihuana emanating from the back of the vehicle which gave the officers probable cause to believe they might find a quantity of marihuana in the trunk.

There was no such factor in *Gill.* There is no such factor in this case.

**6.** Nor is the State's argument supported by *Michigan v. Thomas,* supra. In that case the defendant was arrested for possession of open intoxicants in a motor vehicle. Because the defendant's passenger was too young to legally drive, the arresting officers impounded his car

### III.

What the majority does rely on, *sua sponte*, to overrule *Gill* is a semantically watered down conception of probable cause. Rather than inquire whether it was reasonable under the circumstances to believe that a controlled substance would be found in the trunk of the automobile, the majority now asks whether it was reasonable to "assume" a controlled substance "might" be found there. The distinction, while subtle, is nevertheless critical—indeed, in the instant case it would appear dispositive.

Quoting from the Supreme Court of Nebraska the majority observes:

> and commenced to inventory its contents. During the course of the inventory marihuana was found in the glove compartment. The officers proceeded to conduct a thorough investigation of the car interior and the trunk. In the air vents under the dashboard was found a .38 caliber revolver. The defendant was prosecuted for possession of a concealed weapon.
>
> The State contended, *inter alia,* that the discovery of marihuana in the glove compartment during the legitimate inventory search provided probable cause to believe there was contraband elsewhere in the car, including the trunk. "Without attempting to refute the State's contention that this discovery gave the officers probable cause to believe there was contraband elsewhere in the vehicle, the [Michigan] Court of Appeals held that the absence of 'exigent circumstances' precluded a warrantless search." 458 U.S. at 262, 102 S.Ct. at 3081, 73 L.Ed.2d at 753. It is the holding that exigent circumstances are required to justify a warrantless automobile search that the Supreme Court found erroneous in *Michigan v. Thomas.* Neither the Michigan Court of Appeals nor the United States Supreme Court expressly decided the question of whether the contraband in the glove compartment provided probable cause to search the trunk.

**7.** I do not read the quote from *Watts* as expansively as does the majority. There the defendant was stopped for speeding. The arresting officer smelled burnt marihuana and asked the defendant if he had any in the car. After the defendant denied having marihuana, the officer spotted in the back seat "a small amount of marijuana in plain view in a cooler with the lid partially off." The defendant was arrested and the key to the trunk was found in his sock, *after* he told the officer he could not find it.

The full paragraph from which the quote is taken reads as follows:

"Having found a quantity of illicit drugs in one part of the automobile does not sensibly suggest the probability that no more such substance is present."

*State v. Watts,* 209 Neb. 371, 307 N.W.2d 816, 819 (1981).[7] But stating the double negative thus does not make self evident its converse, *viz:* that finding a quantity of illicit drugs in part of an automobile *does* sensibly suggest the probability that more such substance is present in another, independently enclosed portion of the vehicle. Even if it did, to say that a probability is "suggested" is really no more than to point out a possibility. It is always reasonable to assume that a suspected violator "might" be keeping concealed weapons or contraband. It is that possibility that ren-

> "The defendant argues that the state trooper may have had probable cause to search the interior of the car, but after finding the bag of marijuana in the cooler, he could search no further without independent reason to believe that there was marijuana in the trunk. For support, the defendant refers this court to *Wimberly v. Superior Court,* 16 Cal.3d 557, 547 P.2d 417, 128 Cal.Rptr. 641 (1976); *Commonwealth v. White,* 374 Mass. 132, 371 N.E.2d 777 (1977); *State v. Patino,* 163 N.J.Super. 116, 394 A.2d 365 (1978); and others. The holdings in those cases to the contrary notwithstanding, we believe it just as logical to conclude that the finding of the small amount of marijuana in the passenger compartment, after being told by the defendant that none existed, simply served to substantiate the officer's suspicions and furnish additional probable cause to make a complete search of the automobile. Having found a quantity of illicit drugs in one part of the automobile does not sensibly suggest the probability that no more such substance is present."

It is clear that the Nebraska court's statement was made in the context of refuting the defendant's assertion that once some marihuana was discovered the officer's suspicion was confirmed and he had no cause to search the vehicle further. Thus it was intended to convey no more than the idea that the probable cause the court perceived already had arisen, on the strength of the marihuana odor, did not dissipate once some marihuana was found. It was not meant to serve as some kind of analytical framework for applying the probable cause standard, as the majority seems to imply.

I find it significant that the Nebraska court ultimately held that it was the marihuana found in the back seat, *along with the defendant's several attempts to deceive the arresting officer,* that supplied the probable cause to search the trunk.

ders permissible the *Terry* patdown and the automatic search of the person incident to arrest. However, more is required to sustain the search of what must be presumed to evince some reasonable expectation of privacy, *Ross,* supra, and *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) notwithstanding, *viz:* the locked trunk of a car. That the trunk inevitably "goes along for the ride" may well justify its search without a warrant, but it cannot alone give rise to probable cause to search, as the majority pithily suggests. Even a "practical, nontechnical" understanding of probable cause, *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), does not transform it into simply that which under the circumstances cannot be ruled out. I cannot join in this gratuitous emasculation of the probable cause requirement.

### IV.

Finally I must protest the majority's importation of *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) into this cause. Presumably the majority does so because it cannot otherwise place Officer Dean in a position to discover the "Black Mollies" and the cash which it finds gave rise to probable cause to search the trunk,[8] since that discovery cannot be justified pursuant to a lawful impoundment and inventory. See n. 1, *ante.* Dean's presence in the car need not be justified at all by this Court, however, since it was not made an issue on appeal nor passed on *sua sponte* by the court of appeals. Thus, the "question remains" only in the over-reaching minds of the majority.

For all the foregoing reasons I respectfully dissent.

MILLER, Judge, dissenting.

While I join the dissenting opinion of Judge Clinton, it seems important to spell out the devastation to our Texas jurisprudence caused by today's majority opinion. By the simple expedient of casting five votes in favor of the holding in *Brown v. State,* 657 S.W.2d 797 (Tex.Cr.App.1983), dealing with Art. I, § 9 of the Texas Constitution (search and seizure), they have abrogated our right to interpret our own Constitution and have bound us to allowing the United States Supreme Court to do so.

*Brown,* supra, relied on by the majority as authority for this abominable policy decision, *was* a plurality opinion that was the first to espouse the idea that we should *give up* our right to interpret Art. I, § 9, supra differently than the United States Supreme Court might see fit to interpret the Fourth Amendment of the United States Constitution. The *Brown* plurality decision was, by this pronouncement, a radical departure from past practice and precedent. True, throughout our history we have often interpreted Art. I, § 9, supra, in harmony with similar interpretations of the United States Supreme Court vis-a-vis the Fourth Amendment. It can safely be said that virtually every state in the Union has followed this practice. But to abdicate our ability to interpret our Constitution as we see fit is a far different matter. To justify such abdication solely on the basis of our frequent harmonious interpretation is ludicrous. There is no precedent for same and I dare say no real justification, except perhaps a philosophical one.

I suppose this action would be more palatable if Texas were originally one of those territories whose only law prior to statehood was the U.S. Constitution. At least then one could argue that the framers intended to exactly mirror in our Constitution's search and seizure section what our country's founding fathers accomplished in the Fourth Amendment.

Of course Texas was never a territory. We were an independent nation from 1836 to 1846 and we joined the Union then by

---

8. Query, however, whether it was "reasonable" under the Fourth Amendment and Art. I, § 9 of the Texas Constitution to have placed appellant under full custodial arrest for driving without a valid Texas driver's license. See *Williams v. State,* 726 S.W.2d 99 (Tex.Cr.App. delivered this day) (Clinton, J., dissenting). But see also *Snyder v. State,* 629 S.W.2d 930, 934 (Tex.Cr.App.1982). This issue was neither briefed nor decided in the court of appeals.

treaty—one sovereign to another. After joining the Union we carried over the written principles upon which our Country (Texas) was founded into the principles of government of our State. As such we have and we pride ourselves in having our own concepts of what our Constitution means to us. To willingly vest interpretation of any part of our Constitution in a court composed of justices who are neither elected by the people of Texas nor necessarily nominated for office by a president the people of Texas elected, and who certainly are not accountable to the people of Texas, is a genuine travesty of Texas justice.

I dissent.