**STATE of Missouri, Respondent,**

v.

**Donald BRANSTETTER, Appellant.**

**No. WD 60916.**

Missouri Court of Appeals, Western District.

June 10, 2003.

---

Kent Denzel, Columbia, MO, for Appellant.

John M. Morris, III, Andrea M. Follett, Jefferson City, MO, for Respondent.

Before: LOWENSTEIN, P.J., ULRICH, J., and STEELE, Sp. J.

HAROLD L. LOWENSTEIN, Judge.

Donald Branstetter appeals from his conviction for felony stealing, section 570.030, and sentence of ten years of imprisonment as a prior and persistent offender, to be served consecutively to his existing sentences.[1] Branstetter's only claim on appeal is that the trial court erred in denying his motion to dismiss based on the fact he was not brought to trial on the charge within 180 days, pursuant to the requirements of the Uniform Mandatory Disposition of Detainers Law ("UMDDL"), §§ 217.450–217.485.[2] He asserts that due to the State's failure to timely try him, the trial court lost subject matter jurisdiction. The facts of this case bring into focus the potential effects of a writ of habeas corpus *ad prosequendum* on the law of detainers in Missouri.

### FACTS

The record on appeal reveals the following timeline:

| | |
|---|---|
| June 20, 2000 | Prosecuting attorney of Miller County ("prosecutor") files complaint and request for issuance of an arrest warrant on the challenged felony stealing charge in the Circuit Court of Miller County ("court"); warrant issued. |
| July 14, 2000 | Arrest warrant served on the defendant. |
| July 19, 2000 | Defendant delivered to the Missouri Department of Corrections ("DOC") to begin serving a sentence for an unrelated crime. |
| August 21, 2000 | Defendant files a pro se "Demand for Speedy Trial and Final Disposition of Detainers Pursuant to Art. I, Section 18(A) of the Missouri Constitution and RSMo. 217.450" with the court and the prosecutor. |

---

1. Unless otherwise indicated, all statutory references are to the RSMo 2000. The evidence at trial was that he stole a plastic display case containing eighteen cigarette lighters from a truck stop.

2. As discussed more fully *infra*, this law provides for the prompt disposition of detainers based on untried state charges pending against a prisoner held within Missouri's correctional system, and encourages prosecutors to proceed to trial on the charge underlying the detainer in an expeditious manner.

August 24, 2000 Prosecutor files application for a writ of habeas corpus ad prosequendum; writ granted and issued to the Miller County Sheriff ("Sheriff").

August 30, 2000 .Prosecutor files application for a second writ of habeas corpus ad prosequendum; writ granted and issued to the Sheriff. Preliminary hearing set for September 27, 2000.

September 27, 2000 Defendant appears in court and waives his right to a preliminary hearing. Case bound over for arraignment on October 16, 2000.

October 10, 2000 Prosecutor files application for a third writ of habeas corpus ad prosequendum; writ subsequently granted and issued to the Sheriff on October 12, 2000.

October 25, 2000 Prosecutor files application for a fourth writ of habeas corpus ad prosequendum; writ subsequently granted and issued to the Sheriff on October 26, 2000.

November 20, 2000 Case called for arraignment. Defendant appears without an attorney and court enters a not guilty plea on his behalf. Defendant requests and is granted the right to be represented by a public defender; court orders case set for trial "BEFORE 2/16/01." [3]

December 7, 2001 Case set for jury trial January 22–26, 2001.

January 5, 2001 Defense counsel files motion for continuance.

January 23, 2001 Prosecutor files application for a fifth writ of habeas corpus ad prosequendum; writ granted and issued to the Sheriff; case called; motion to withdraw defense counsel's January 5, 2001 motion for continuance filed; defendant's motion to remand to Associate Division for preliminary hearing sustained without objection by the State because "the Public Defender failed to get conflict counsel for Def. at P.H."

---

3. February 16, 2001, was the last business day within the 180–day period beginning August 21, 2000 (the day Branstetter began his attempts to invoke the UMDDL).

January 24, 2001 Preliminary hearing held; court found probable cause; case bound over for arraignment on February 13, 2001.

February 6, 2001 DOC responds to defendant's written request for information on the date of any pending holds or detainers that had been lodged against him; tells defendant no detainers have been filed.

February 8, 2001 DOC responds to defendant's second written request for information on pending holds or detainers; tells defendant no detainers have been filed but indicates it is aware he has been released to the Miller County Sheriff on multiple writs of habeas corpus ad prosequendum in the untried felony stealing matter.

February 20, 2001 Court sua sponte binds defendant over for arraignment in circuit court on March 19, 2001.

March 19, 2001 State fails to "writ the defendant in" for arraignment; arraignment reset for April 16, 2001.

March 21, 2001 Prosecutor files application for a sixth writ of habeas corpus ad prosequendum; writ subsequently granted and issued to the Sheriff on April 4, 2001.

April 13, 2001 Prosecutor files application for a seventh writ of habeas corpus ad prosequendum; writ granted and issued to the Sheriff.

April 16, 2001 Defendant arraigned, enters a not guilty plea; case ordered set for a jury trial.

May 14, 2001 Case set for jury trial on January 7–11, 2002.

June 21, 2001 Defendant files a verified pro se "Motion To Dismiss With Prejudice" based on his August 21, 2000 demand for final disposition of detainers under the UMDDL.

June 28, 2001 Motion to dismiss overruled without a hearing.

July 19, 2001 Defendant files a pro se "Motion for Reconsideration of Judgment Entered June 28, 2001, Denying Motion to Dismiss With Prejudice."

October 12, 2001 Defendant files a pro se "Motion for Hearing" on his July 19, 2001 motion for reconsideration.

November 19, 2001 Court does not grant a hearing but determines that the case will "proceed to trial."

November 28, 2001 Defendant files a pro se "Motion to Dismiss With Prejudice on Constitutional Grounds."

December 31, 2001 Prosecutor files application for an eighth writ of habeas corpus ad prosequendum; court took no action on this application.

January 2, 2002 Prosecutor files renewed application for an eighth writ of habeas corpus ad prosequendum; writ granted and issued to the Miller County sheriff.

January 9, 2002 Bench trial; court finds defendant guilty of felony stealing.

Immediately prior to trial, the court took up Branstetter's motion to dismiss based upon the State's failure to try the case within the 180–day period specified by the UMDDL. Branstetter's offer of proof on the issue of the existence of a detainer consisted of the testimony of Lilly Adams, the Corrections Records Officer at Algoa Correctional Center. She said Branstetter's prison file did not indicate the existence of any detainers placed on him by Miller County, and that it contained no correspondence whatsoever from any Miller County judge, prosecuting attorney, or law enforcement officer requesting that a detainer or hold be lodged against him, or asking that Miller County be advised as to when he was going to be released. She also testified that sometime before February 6, 2001, Branstetter submitted a written request for the date of "the hold or whatever you have on me from Miller County." Her office's response, which was transmitted to him on February 6, 2001, was that there was no detainer from Miller County on record. On February 8, 2001, Adams' office received another request from Branstetter for the same information on pending holds or detainers. The response from Adams' office was "You do not have a hold or a detainer, however you've been going out on writs to Miller County." Adams acknowledged that Branstetter's file contained eight writs of habeas corpus *ad prosequendum* served by the Miller County sheriff and explained that, after each such court appearance, a DOC employee called the circuit clerk's office to learn the updated disposition of the case. Adams also testified that after Branstetter's court appearance on April 16, 2001, DOC was informed by the Miller County circuit clerk via telephone that his case

had been bound over for trial. Asked why Branstetter was told he had no detainers, Adams explained that "I would need correspondence from the county to place a detainer, a written request or a fax, certified warrant requesting a detainer be placed, and that [had] not been done." Later, she noted: "We just have all the writs of *prosequendum* from the counties in the file, but I don't have any correspondence letter from the sheriff or court to place a detainer." Finally, Adams stated that although her office would not normally notify Miller County if Branstetter was about to be paroled, it was routine office procedure to run warrant checks on prisoners whose release was imminent. If the check showed that an outstanding warrant existed, her office would notify the sheriff's office via Teletype, asking whether the sheriff wanted to take custody of the inmate.

After receiving the offer of proof and considering the arguments of counsel, the trial court denied Branstetter's motion, ruling that "[i]n this case, there was no detainer filed by Miller County, there's no indication that they were ever had any knowledge other than the fact that he was being writted out to Miller County. Therefore, it's overruled on those grounds." [4]

### ISSUE

In his sole point on appeal, Branstetter argues that the trial court erred in overruling his motion to dismiss the stealing charge against him in that the court lost jurisdiction to try him because the State's repeated applications for writs of habeas corpus *ad prosequendum* to pro-

---

4. The trial court also overruled Branstetter's *pro se* November 28, 2001 "Motion to Dismiss With Prejudice on Constitutional Grounds" at this time. Branstetter does not challenge the denial of that motion in this appeal.

cure his appearance from the DOC were the functional equivalent of filing a detainer and the 180–day period specified by the UMDDL had long since expired before his trial was held.

### ANALYSIS

■ At the outset, a few observations concerning the writ of habeas corpus *ad prosequendum* are appropriate. At common law, the writ of habeas corpus had several forms. Among them was habeas corpus *ad prosequendum* ("you have the body to prosecute"), which, unlike the principal form of the writ, habeas corpus *ad subjiciendum* ("you have the body to submit"), does not question the legality of the restraint but is used to remove a prisoner to the proper jurisdiction for trial and trial-related proceedings. *State ex rel. Billings v. Rudolph*, 322 Mo. 1163, 17 S.W.2d 932, 934 (1929); 39 C.J.S. *Habeas Corpus* § 2, at 460 (1976). In Missouri, writs of habeas corpus *ad prosequendum* have long been a traditional way of securing the presence of prisoners located in another jurisdiction. *See, e.g., State ex rel. Brooks v. Bone*, 473 S.W.2d 681, 683 (Mo. 1971) (Seiler, J., concurring) ("[I]t is common knowledge that prosecutors have for a long time successfully used habeas corpus to bring penitentiary inmates into magistrate court to answer complaints."); *State v. Robinson*, 325 S.W.2d 465, 469 (Mo. 1959).

■ A brief examination of the leading Missouri case on the purpose and provisions of the detainer statute at the heart of the issue here is now in order. "The Uniform Mandatory Disposition of Detainers Law (UMDDL) provides for the prompt disposition of detainers based on untried state charges pending against a prisoner held within this state's correctional system.... The purpose of the UMDDL is to provide a relatively simple

procedure for an expeditious release of detainers filed against a prisoner. Because of the time limits, it requires the prosecuting officials to move forward to trial of the charge underlying the detainer. It looks toward valid charges being ripened into trials, and invalid charges being dismissed." *State ex rel. Kemp v. Hodge*, 629 S.W.2d 353, 354–55 (Mo. banc 1982). In enacting the UMDDL, " 'the aim of the legislature was to prevent those charged with enforcement of criminal statutes from holding over the head of a prisoner undisposed of charges against him.' " *Id.* at 355 (quoting *State v. Wilson*, 22 Utah 2d 361, 453 P.2d 158, 159 (1969)). In particular, the General Assembly sought to reduce the well-documented baleful effects of detainers on the way prisoners are treated with respect to parole possibilities, work programs, security, treatment, and rehabilitation. *Id.* "Experience has shown that once a charge or detainer is filed against an inmate, that inmate's status within the prison changes adversely." *Id.* Quoting *State v. Richmond*, 611 S.W.2d 351, 353–54 (Mo.App.1980), a case concerning the general Speedy Trial Act (§ 545.780), the court observed that the State also has a strong interest in proceeding to trial swiftly: " 'The statute is not one which was enacted solely for the benefit of the defendant, but is also for the benefit of society. A speedy trial may indeed work against the interests of the defendant. In many cases, the defendant would postpone the trial as long as he could. Society, however, always has an interest in the expeditious disposition of criminal accusations.' " *Kemp*, 629 S.W.2d at 356 n. 4.

Under section 217.450.1 of the UMDDL, a Missouri prisoner may request a final disposition of any untried indictment, information, or complaint pending in the state "on the basis of which a detainer has

been lodged against him while so imprisoned." Section 217.450.1 further provides that the request "shall be in writing addressed to the court in which the indictment, information or complaint is pending and to the prosecuting attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment." The offender's request is also to be delivered to the "director,"[5] who is to make specific certifications and send copies of the request and certificate by registered mail to the court and prosecuting attorney. § 217.455. Within 180 days after receipt of the request and certificate pursuant to sections 217.450 and 217.455 by the court and prosecuting attorney or within such additional necessary or reasonable time as the court may grant for good cause, "the offender or his counsel being present, the indictment, information or complaint shall be brought to trial." § 217.460. If the indictment, information or complaint is not brought to trial within the 180–day period, "no court of this state shall have jurisdiction of such indictment, information or complaint, nor shall the untried indictment, information or complaint be of any further force or effect; and the court shall issue an order dismissing the same with prejudice." *Id.*

The interstate counterpart of the UMDDL is known as the Interstate Agreement on Detainers ("IAD" or "Agreement"), §§ 217.490–217.520. The IAD applies to prisoners incarcerated in another jurisdiction who have untried Missouri charges and are subject to detainers originating in Missouri. *State ex rel. Suitor v. Stremel*, 968 S.W.2d 221, 222 (Mo.

App.1998). While the two statutes are not parallel in all respects, the UMDDL and IAD are to be considered *in pari materia*, *State v. Walton*, 734 S.W.2d 502, 503 (Mo. banc 1987), and should be construed in harmony with each other when possible, *Dillard v. State*, 931 S.W.2d 157, 165 (Mo. App.1996).

The State begins its defense of the trial court's ruling by claiming that Branstetter is not entitled to relief under the UMDDL since he did not obtain the certifications described in section 217.455.[6] However, the trial court resolved this issue against the State, finding that DOC did not issue the certifications "because they [had] advised Mr. Branstetter that he did not have a detainer lodged against him" in the first place. *See Suitor*, 968 S.W.2d at 223–24 (when an irregularity in compliance with the procedural requirements of the IAD results from the actions of the official having custody of the prisoner and does not result in the omission of an essential element of the statute, the irregularity will not frustrate the prisoner's attempt to invoke his rights). Furthermore, even if Branstetter had been responsible for the director's failure to issue the certifications, it would not have been fatal to his claim for relief:

> The Interstate Agreement also requires that the request be forwarded through the director who is to include a certificate containing the same information as required by section 217.455. Our courts have permitted an interstate prisoner to make a request for final disposition pursuant to the Agreement by mailing the

---

5. *See* § 217.010(6), which defines "director" as the Director of the Department of Corrections or his designee.

6. Section 217.455(1) provides that upon receipt of the offender's UMDDL request, the director is to "[c]ertify the term of commit-

ment under which the offender is being held, the time already served, the time remaining to be served on the sentence, the time of parole eligibility of the offender, and any decisions of the state board of probation and parole relating to the offender."

request directly to the court and prosecutor without processing it through the director. *See State ex rel. Saxton v. Moore*, 598 S.W.2d 586, 590 (Mo.App. 1980). In that case, the state did not claim that the prisoner should be denied the benefits of the Interstate Agreement because of self-help, but it was noted that courts generally do not require "literal and exact compliance by the prisoner" so long as a good faith effort is made. *Id.* at 589–590.

*State ex rel. Clark v. Long*, 870 S.W.2d 932, 939 (Mo.App.1994). *See also People v. Campbell*, 742 P.2d 302, 311 (Colo. banc 1987) (failure to deliver the request to prison officials for processing does not defeat substantial compliance with the UMDDL where the prosecutor had actual notice of the request and did not act on it).[7] The trial court, therefore, correctly ruled against the State on this point.

The State does not dispute that the felony stealing complaint filed against Branstetter on June 28, 2000 was not brought to trial within the requisite 180–day period described in section 217.460. Nor does it deny that the vast majority of the more than 500–day long delay between the filing of Branstetter's UMDDL motion on August 21, 2000, and the commencement of his trial on January 9, 2002, is chargeable to the State, not Branstetter or his counsel. Rather, the State argues that the 180–day clock never started running since no detainer was ever lodged against Branstetter on the basis of the untried felony stealing charge. Clearly, in order for a Missouri prisoner to obtain the protection of the UMDDL, a detainer must be lodged against him on the basis of an untried

indictment, information, or complaint. § 217.450.1; *Tillman v. State*, 939 S.W.2d 388, 389 & n. 2 (Mo.App.1996). While conceding that Miller County law enforcement officials did not lodge a formal detainer against him, Branstetter contends he is still entitled to dismissal of the felony stealing charge under the UMDDL since the numerous writs of habeas corpus *ad prosequendum* sought by the Miller County prosecuting attorney and returned by the Miller County sheriff served as *de facto* detainers.

There are no reported Missouri cases directly on point with regard to the UMDDL, but the courts of this state have considered the question of whether, in and of itself, the issuance and successful return of a writ of habeas corpus *ad prosequendum* constitutes the lodging of a "detainer" sufficient to trigger the provisions of the IAD. In each such case, the court has held that it does not. *Leisure v. State*, 828 S.W.2d 872, 876–77 (Mo. banc), *cert. denied*, 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992); *State v. Leisure*, 838 S.W.2d 49, 55 (Mo.App.1992); *State v. Leisure*, 810 S.W.2d 560, 576 (Mo.App.1991); *Winningham v. State*, 765 S.W.2d 724, 724 (Mo.App.1989); *State v. Choate*, 600 S.W.2d 37, 40–41 (Mo.App.1979); *State v. Kelsey*, 592 S.W.2d 509, 514 (Mo.App. 1979); *State v. Haslip*, 583 S.W.2d 225, 227–28 (Mo.App.1979). *But cf. Choate*, 600 S.W.2d at 41 (citing scholarly support for the proposition that service of a warrant can constitute the filing of a detainer, but noting that "[t]his opinion and the disposition of this appeal under the facts of this case do not approach or attempt to resolve

---

7. In *Kemp*, the Supreme Court of Missouri noted that the UMDDL is in effect in eight states: Alabama, Arizona, Colorado, Kansas, Minnesota, Missouri, North Dakota, and Utah. 629 S.W.2d at 355 & n. 3. The court went on to hold that cases from the other

states that have adopted the UMDDL "are valuable for interpreting the statute." *Id.* at 359. Recourse to case law from Colorado, as well as from the other states which have adopted the UMDDL is, therefore, appropriate.

that issue") *with Billings,* 17 S.W.2d at 934 (stating that a writ of habeas corpus *ad prosequendum* "is equivalent to a warrant for an arrest.")

A close reading confirms that the basis for the holdings on the detainer issue in *Haslip, Kelsey, Choate, Winningham,* and the three *Leisure* cases was the United States Supreme Court's decision in *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), a case construing the IAD, to which the United States became a party in 1970. Quoting the House and Senate Committee Reports accompanying the legislation at the time of its passage,[8] the Court in *Mauro* noted that " '[a] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' "[9] 436 U.S. at 359, 98 S.Ct. 1834 (citations omitted). It proceeded to determine that in the federal system, writs of habeas corpus *ad prosequendum* are different from and are used for different purposes than detainers: "The role and functioning of the *ad prosequendum* writ are rooted in history, and they bear little resemblance to the typical detainer which activate the provisions of the Agreement." 436 U.S. at 358, 98 S.Ct. 1834. Unlike a writ of habeas corpus *ad prosequendum,* which is issued by a court, a detainer may be lodged against a prisoner on the initiative of a prosecutor or law enforcement officer. *Id.* "Rather than requiring the immediate presence of the prisoner, a detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison." *Id.*

Because writs of habeas corpus *ad prosequendum* are issued pursuant to a federal statute and are immediately executed, the Court found that the enactment of the federal version of the IAD was not necessary to achieve their expeditious disposition. *Id.* at 360, 98 S.Ct. 1834. The Court further reasoned that due to the long history of writs of habeas corpus *ad prosequendum,* it could be assumed that Congress was aware of such writs to obtain prisoners and that in using the word "detainer," Congress must have meant something different from a writ of habeas corpus *ad prosequendum. Id.* at 361, 98 S.Ct. 1834. Finally, in response to the petitioner's argument that such a holding would allow federal prosecutors to circumvent the IAD by using *ad prosequendum* writs instead of formal detainers, the Court observed: "[I]t is not necessary to construe 'detainer' as including these writs in order to keep the United States from evading its duties under the Agreement. When the United States obtains state prisoners by means of a writ of habeas corpus *ad prosequendum,* the problems the Agreement seeks to eliminate do not arise; accordingly, the Government is in no sense circumventing the Agreement by means of the writ." *Id.* Thus, the Court concluded, "a writ of habeas corpus *ad prosequendum* is not a detainer for purposes of the Agreement." *Id.*

Branstetter relies on the Southern District's opinion in *Carson v. State,* 997 S.W.2d 92 (Mo.App.1999), to support his argument that under the circumstances, this court should nevertheless grant him relief under Missouri's UMDDL. In *Carson,* the defendant was charged in the associate circuit court of Camden County

---

8. The IAD itself contains no definition of the word "detainer." 436 U.S. at 359, 98 S.Ct. 1834. The same is true of the UMDDL.

9. The Supreme Court of Missouri cited this definition with approval in *Kemp.* 629 S.W.2d at 354 n. 2.

in August 1994 with three counts of selling a controlled substance. In July 1995, he was delivered to the Fulton Diagnostic Center to begin serving a sentence on an unrelated charge, while the Camden County charges were still pending. A few weeks later, the Warrant Officer of the Camden County Sheriff's Department wrote a letter to the authorities at Fulton, stating: "We do not wish to place a detainer on [Carson] at this time but would like to be notified thirty (30) days prior to his release." *Carson*, 997 S.W.2d at 94. (The letter also said that if there were any questions, the writer or the Camden County prosecuting attorney's office should be contacted, and carbon copies were shown sent to both the prosecuting attorney and the Camden County Associate Circuit Court.) In September 1995, Carson filed a "Motion for Speedy Trial and Final Disposition of Detainers," citing sections 217.450 and 217.460 of the UMDDL. In July 1996, he filed a motion to dismiss the three untried charges, alleging that the July 1995 letter from the Camden County warrant officer to Fulton was sufficient proof of the existence of a detainer to invoke his right to a speedy disposition under the UMDDL and that the State had failed to bring him to trial within the requisite 180 days. *Id.* at 94–95. The trial court denied the motion, and Carson was convicted. On appeal from the denial of his Rule 24.035 motion for post-conviction relief, Carson argued that the letter from the Camden County Sheriff's Department to Fulton served as the functional equivalent of a detainer, thereby entitling him to the protections of the UMDDL. *Id.* at 95.

■ The Southern District in *Carson* began its analysis by noting that since the UMDDL and the IAD are *in pari materia*, federal cases decided pursuant to the IAD are "persuasive in construing the meaning of the term 'detainer' as used in the UMDDL." [10] *Id.* at 96, 97. It then proceeded to quote the *Mauro* Court's definition of a detainer ("a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction"), as well as this one from *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985): "[A] request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." [11] The court also observed that strict technical requirements regarding the form by which prison au-

---

**10.** This raises an important yet subtle distinction between the IAD and the UMDDL. As a congressionally-sanctioned interstate compact, the IAD is subject to federal construction. *Ellsworth v. State*, 964 S.W.2d 455, 456 (Mo.App.1998) (citing *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985)). Thus, in contrast to the UMDDL, U.S. Supreme Court interpretations of the IAD are binding upon state courts.

**11.** During oral argument of this case, Branstetter noted (and this court agrees) that this definition is no longer very helpful in determining what does or does not constitute a detainer in Missouri due to the enactment, in 2001, of "Jake's Law," § 221.510, RSMo Supp.2001. In a nutshell, that statute commands all state and local correctional officials to conduct a search of the Missouri Uniform Law Enforcement System (MULES) and the National Crime Information Center (NCIC) computer databases for any pending outstanding felony or misdemeanor warrants "on all prisoners about to be released, whether convicted of a crime or being held on suspicion of charges." § 221.510.1. It also provides that if the search reveals any outstanding charges or warrants, the official who conducted it must inform the issuing agency that the prisoner is in custody, and prohibits the prisoner's release except to the custody of the issuing agency unless the issuing agency no longer wants the prisoner. § 221.510.3.

thorities receive notice of the existence of a detainer should not be imposed, " 'as such technical requirements would frustrate the very purpose of the [IAD] by rendering it inapplicable in many cases where prison officials have in fact been notified that charges are pending in another state against one of their inmates.' " *Carson*, 997 S.W.2d at 97 (quoting *State v. Wells*, 94 Ohio App.3d 48, 640 N.E.2d 217, 220 (1994)).

Against this factual and interpretive backdrop, the court in *Carson* granted the defendant *post-conviction relief*, holding that under the circumstances, the letter did indeed constitute a *de facto* detainer, thereby permitting Carson to invoke the provisions of the UMDDL. 997 S.W.2d at 97. The court's treatment of the issue of a detainer's substance as opposed to its form is particularly instructive:

> To hold that the letter did not qualify as a "detainer" would be to place form over substance. We recognize that the Warrant Officer said that she did not wish to place a detainer on Movant "at this time," but the letter then proceeded, in effect, to accomplish that result by asking for an advance notice of Movant's release and implying that there was a pending charge. It, therefore, qualified as a "detainer" pursuant to the authorities cited above. To hold otherwise because of the statement in the letter that Camden County did not wish to "place a detainer on [Movant] at this time" would permit a criminal justice agency to obtain the effect of placing a detainer on a defendant without permitting the defendant to have the corresponding rights afforded by the UMDDL. Accordingly, we hold that the letter in question did qualify, under these circumstances, as a

detainer, thereby entitling Movant to request the disposition of the charges under the UMDDL.

*Id.* at 97–98. While the facts here are obviously quite different from those in *Carson*, in this court's view that case does indicate that in determining what constitutes a detainer under the UMDDL, Missouri courts should be willing to look beyond self-serving disclaimers and technical notice requirements to the practical effect of communications from county law enforcement officials to those at state correctional institutions.

This court would be remiss if it did not express concern that giving a prosecuting attorney completely unfettered authority to use multiple writs of habeas corpus *ad prosequendum* as substitutes for a traditional detainer in order to evade the UMDDL might, under the proper circumstances, be tantamount to "permit[ting] a criminal justice agency to obtain the effect of placing a detainer on a defendant without permitting the defendant to have the corresponding rights afforded by the UMDDL," since this is essentially what the court in *Carson* refused to condone. *Carson*, 997 S.W.2d at 98. In the case at bar, the record shows that in a letter accompanying his *pro se* October 12, 2001 "Motion for Hearing," Branstetter alleged: "When I came into FRDC [the Fulton Reception and Diagnostic Center] they told me Miller Co. wanted me & my security level would be a 3 because of it. So my level at a 3 isn't what I would [normally] have doing a 4 year sentence." If this allegation is true,[12] the prosecutor's actions not only served to perpetuate one of the evils the General Assembly sought to remedy in enacting the UMDDL, but also effectively denied Branstetter any means

---

12. The record on appeal contains no indication that it was ever considered by the trial court, nor ruled upon.

of obtaining relief under the statute—which would be a troubling state of affairs, indeed. If true, it would also completely undercut one of the key rationales supporting the United States Supreme Court's decision in *Mauro*, namely, that "[w]hen the United States obtains state prisoners by means of a writ of habeas corpus *ad prosequendum*, the problems the Agreement seeks to eliminate do not arise[.]" 436 U.S. at 361, 98 S.Ct. 1834.

 This court extends the Missouri IAD cases cited earlier in this opinion to hold that a prosecutor's filing of a writ of habeas corpus *ad prosequendum* does not, standing alone, constitute the lodging of a detainer sufficient to trigger the provisions of the UMDDL.[13] This is not necessarily the end of the inquiry. When coupled with a proper showing of prejudice in some aspect of the prisoner's incarceration (*i.e.*, additional facts and circumstances demonstrating that he has been treated by prison officials as if a formal detainer had been lodged against him, such as being assigned to administrative segregation or being given a higher security level, being declared ineligible for educational, treatment, or rehabilitation programs or parole, etc.), the filing of a writ of habeas corpus *ad prosequendum* may be considered a *de facto* detainer entitling the prisoner to the protections of the UMDDL.

A similar concern has been raised (but not decided) by at least one other Missouri appellate court. In *State ex rel. Clark v. Long,* cited earlier in this opinion, the State had not lodged a formal detainer against the defendant on the basis of an untried murder charge. Yet the court noted:

In the instant case, according to the evidence, Defendant was transferred into administrative segregation on June 29, 1992, because there was a pending murder charge against him. Obviously, this charge was known not only to the Defendant but also to the prison officials. Therefore, whether the information came from a detainer or from some other source, the result was the same as it applied to Defendant's status as a prisoner in the state's correctional system. *We are not asked to and do not decide whether knowledge received by the prison officials can be the equivalent of a detainer.*

*Clark,* 870 S.W.2d 932, 938 n. 9 (emphasis added). This is precisely the type of prejudice this court now holds can be sufficient to transform a writ of habeas corpus *ad prosequendum* into a *de facto* detainer.

 Since this court is not, on the present record, in a position to determine whether Branstetter in fact suffered such prejudice, his conviction and sentence must be affirmed. However, we note that jurisdictional defects such as those alleged by Branstetter in this appeal are cognizable in Rule 29.15 proceedings for post-conviction relief. *See* § 217.460 (providing, in part, that if the indictment, information or complaint is not brought to trial

---

13. Even though the many writs applied for by the Miller County prosecuting attorney, granted by the circuit court of Miller County, and successfully served upon DOC officials by the sheriff of Miller County were formally denominated as writs of habeas corpus *ad prosequendum* rather than detainers, they clearly had the practical effect of putting DOC on notice that Branstetter was "wanted to face pending criminal charges in another jurisdic-

tion," *Kemp,* 629 S.W.2d at 354 n. 2, because they reflect, on their faces, that Branstetter was needed "for the purpose of . . . the above-styled case . . . as shown by a certified copy of this writ and a certified copy of the docket sheet herein showing such other court proceeding." Nevertheless, the teaching of *Mauro* and its Missouri progeny is that, in and of itself, this is insufficient proof of the existence of a detainer.

within 180 days after the receipt of the request from the prisoner, "no court of this state shall have jurisdiction of such indictment, information or complaint"); Rule 29.15(a) (providing that relief may be sought in the sentencing court under Rule 29.15 by any "person convicted of a felony after trial claiming that the conviction or sentence imposed violates the constitution and laws of this state ... [or] that the court imposing the sentence was without jurisdiction to do so"); *Carson,* 997 S.W.2d at 98, 99 (noting that "a loss of subject matter jurisdiction inexorably occurs by operation of law when an imprisoned person who has initiated a proper request [under the UMDDL] is not brought to trial within the appropriately determined statutory time period" and rejecting the State's contention that claimed violations of the UMDDL can be raised only on direct appeal).

The judgment of the trial court is affirmed.

All concur.